The next case is 2 Ray ERB Industries, 2019-1193. Mr. Pelton, may it please the court. This case is a matter of first impression based on the evidence presented. The central issue in this appeal is whether the board has given third party registrations absent any significant evidence of use. Their proper weight in determining the conceptual and the commercial strength of the registered mark following this court's 2015 decisions in the Juice Generation and Jack Wolfskin cases. This is a first impression. Isn't this a situation where you have a singular and a plural, cooler and coolers? The applicant's mark is coolers with a Z, yes, at the end. What makes this case unique is the third party registration evidence submitted by the applicant. Which consists of about three dozen third party registrations, more than 10 of which feature cooler itself. The others feature some other variation of cool for the same goods that are at issue here, headwear and apparel goods. And so what makes this case unique is the applicant's reliance on those third party registrations to show the weakness of the absent any additional evidence of third party use. It's the USPTO's position that absent that evidence of use, the applicant cannot demonstrate the commercial weakness of the registered mark. The board's decision dismisses any real analysis of that topic. But nothing in Juice Generation or Jack Wolfskin says that use evidence is required. By providing evidence of use for an applicant is an expense and a burden in an ex parte appeal and an application process. Where the registered mark, like here, is clearly contained in multiple use based registrations that are on their face, highly suggestive and weak, the registered mark, applicants should not automatically be burdened by having to gather and submit evidence of third party use. Can I understand something? The board held that the strength of the mark weighs slightly in favor of no likelihood of confusion, right? Looking at those third party registrations. Why isn't that enough? I mean, that factor responds slightly in your favor. Your point is that it should be found more significantly in your favor? Right. The board did find it slightly in our favor. It's our position that it should have been strongly in our favor had they given proper weight to those third party registrations as to both the conceptual and commercial weakness of the registered cooler mark. What do you think the standard of review is for the amount of weight that should be given to these fact findings made by the commission? Right. I think that overall the standard of review is substantial evidence, but I think that there is a matter of law here where the board and the government relies consistently in the opinion on pages 11 of the appendix and in the red brief on pages 24 and 25, they rely heavily on the AMF case, which is from 1973 discussing third party registrations. And they discount the analysis of this court in the Juice Generation and Jack Wolfskin cases from 2015. And it's important to note that in both of those opinions in 2015, in Jack Wolfskin and Juice Generation, both of which are inter-parties cases, this court, there's no discussion of the prior decision from 1973 in AMF. It doesn't overrule AMF. It does not. It does not explicitly overrule it, but it completely overwhelms it, I would say. And again, the board's reliance on that is misplaced. And we believe, therefore, that the finding that the weakness is only slightly in favor of applicant was misplaced. Well, you know, these trademark cases are very fact intensive. Indeed. And you mentioned the substantial evidence standard. It's a pretty uphill battle. Uphill battle, perhaps, but an important one for not only this applicant, but for all applicants in the U.S. Patent and Trademark Office to have clarity in what Jack Wolfskin and Juice Generation really mean to applicants when they're going through the application process at the USPTO, as thousands of them do every year. And in order to address cited registrations, like here, the applicant with the coolers mark had to address a cited registration for a cooler, and the burden of how much evidence is necessary to show that that cooler mark is significantly weak. Here, we believe that the evidence of record, which, again, consists of more than 10 third-party registrations for the identical goods that also feature the word cooler, are enough to establish that that cooler mark is weak, both conceptually as a result of dictionary definitions and the fact that it's used by multiple other registrants, but also commercially, because those registrations that have been issued by the USPTO that are of in this case are use-based registrations. Those applicants, in order to achieve those registrations, had to submit specimens of use that were reviewed and accepted by the USPTO examiners. Those registrations also had to submit declarations supporting the statements, of course, in the application, including the evidence of use on the goods in the applications. Of note, the cited registration here for cooler is based on a foreign registration, and there is no evidence of use in the record anywhere of the cited registration, because it is based on a foreign registration. Overall, the board found the weakness of the mark weighed only slightly in favor of the applicant, despite the evidence of dictionary definitions showing the term cooler is weak conceptually, along with those more than 10 third-party use-based registrations. You said that when you're talking about the third-party use registrations, you're referring to those that are on your brief at page 14, right? I mean 15, sorry. That's correct. 15 and 16. The board's analysis directly contradicts Jack Wolfskin's opinion of this case when discussing the commercial weakness. Jack Wolfskin says, quote, extensive evidence of third-party registration is powerful on its face, even where the specific extent and impact of the usage has not been established. Also, Juice Generation, again, also issued in the summer of 2015 by this court, admonished the board because it, quote, overlooked this aspect of the inquiry by insisting on specifics as to the third-party use. The board opinion here dismisses the third-party registration evidence when it comes to considering that commercial weakness. And again, they cite back the AMF decision that's more than four decades old and well prior to Juice Generation and Jack Wolfskin. The cases cited by the USPTO's brief, including AMF, generally do not contain any in-depth discussion of third-party registration evidence, as the Jack Wolfskin and Juice Generation opinions do. And while they may not have been explicitly overruled by Jack Wolfskin and Juice Generation, they have clearly been updated the principle and the discussion regarding third-party evidence and commercial weakness. Now, these are just word marks. They're in the same typography, and there are no pictures or anything else to go with them. It's cooler versus coolers, otherwise first. Yes, Your Honor. These are both standard character marks, cooler and coolers. It's our opinion that the Z is more than just pluralizing the term, that it adds some fanciness, some youthfulness, and some zip to the word. And frequently, the goods are the same or overlap. There's no dispute that the goods are overlapping their headwear. The applicant is a successful manufacturer of industrial and commercial products, including helmets and headwear for safety use in industrial uses. Those third-party registrations that we have made of record include Coolera for hats, Body Cooler for headwear, The Greener the Cooler for hats, Cooler Fire for hats, Swamp Cooler Bandanas for bandanas. Those are further away. Those may have more distinguishing factors, but they all coexist along with the cooler-cited registration. But the point is that the fact that they all coexist, we believe that shows that cooler is extremely weak, and that not only is it weak conceptually, but that it's commercially, because it's been adopted and it's been registered by more than 10 parties for the identical goods. And again, those are all use-based registrations. When these third-party registrations are given proper weight, it is clear that the differences between the applied for coolers mark and the registered cooler mark are sufficient to avoid a likelihood of confusion. Have you taken any action separately from this to seek to deregister? I don't know if that's the right word, the cooler mark, or some sort of, what would it be? I don't know what it would, I don't think that's an option. It would be a petition for partial cancellation or for cancellation of the cited registration. The applicant has not done that here because there are expenses and risks and burdens involved in doing so. That could be an option, but we believe that ex parte in the examination, it should be sufficient to overcome that refusal and to allow the mark for approval. Of course, if the mark is approved and the registered entity believes that there is a conflict, they would have the opportunity to file an opposition should it come to that. If the cooler mark were cancelled, what would be the effect on your ability to register your mark? Here, the cooler mark is the citation of the likelihood of a confusion with the registered cooler mark is the only obstacle to registration. We will save the rest of your time for you, Mr. Casagrande. Good morning, Your Honors. May it please the Court. I just wanted to make a couple of points here. One is that my friend on the other side said that he acknowledges that the board found that the mark that was cited as a blocking registration has a restricted scope of protection and has weakness. But what he wants is a finding that is extremely weak. That's a factual, basically, equivalent with the factual findings that the board made, which we think, as you pointed out earlier, is something that's subject to the substantial evidence review and is not something that can be done or re-found in a different way by this court. The second thing is I wanted to point out that the Juice Generation and Jack Wolfskin cases respect the difference between, just like the prior precedents did, respect the difference between the issues that third-party registrations go to and the issues that third-party use goes to. They both ultimately go to strength, but third-party registrations go to conceptual strength. Third-party use goes to marketplace strength. Both of those cases respect that. They both have passages where they talk about registration, they talk about use, and what those particular things can show. And the board's decision does cite both of those cases. It does cite both of them and it follows both of them and makes precisely that differentiation, notwithstanding the fact that it ultimately decided that particular factor in the favor of the applicant here, which, as you pointed out, is a factual matter. If there are no further questions, I would just ask the court to affirm the judgment of the board. Thank you, Mr. Casperanti. Mr. Pelton, there's some rebuttal time. The Juice Generation and the Jack Wolfskin cases do indeed discuss use as well as registration submitted by the third parties. What we're looking for here is, again, not only a change to the findings by the board due to their misplaced analysis and their reliance looking back to AMF, but we're looking for clarity for applicants in terms of, to the extent that use may be useful or may even be required to show when it comes to third-party registrations and use and commercial weakness, some more guidance as to how much use and what type of use would constitute that. There's not an in-depth discussion of the nature of the use in Jack Wolfskin or Juice Generation. Again, the court in those opinions makes it clear that use and registration is, quote, powerful on its face, even where the specific extent and impact of the usage has not been established. We'll note one more time here that these third-party registrations here that feature the word cooler for the identical goods that are an issue of both the registrant and the applicant are use-based applications that have been approved and vetted by the U.S. Patent and Trademark Office. Of course, overall, in a DuPont analysis and a likelihood of confusion analysis, any one factor can be dispositive, and we believe that had the board gotten it right and given more weight to the findings of the third-party registrations and found something more than its slightly favoring applicant in this, and had they found that it strongly favored applicant as to the weakness of the cited registered mark, then we believe the proper analysis here would be dispositive to find no likelihood of confusion. Thank you, counsel. The case is submitted.